UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

REC'D JUL 10

IFEDOO ENIGWE,
   PLAINTIFF,
v.            CIVIL ACTION NO._____
              JURY TRIAL DEMANDED
REGENCY FURNITURE SHOWROOMS,
   DEFENDANT.

## COMPLAINT

1. On June 11, 2023, Plaintiff walked into what he thought was Ashley Furniture. Plaintiff wanted to buy from a company he thought was a direct manufacturer of furniture. When Plaintiff got in, he was greeted by a man who said he was the manager (hereinafter, "the manager"). Plaintiff explained to him that he had been to Raymour and Flanagan shopping for furniture, but he was told that Ashley furniture manufactures its own merchandise. The manager then told Plaintiff that Ashley actually made furniture sold by Raymour and Flanagan. Right then, Plaintiff was sold and decided to buy from Ashley Furniture. Problem was, even though Plaintiff entered into Ashley Furniture, judging by the sign on the door, it actually was Regency Furniture and not Ashley Furniture.

2. Plaintiff looked all around the furniture store without finding anything he liked but with the persuasion powers of the manager, Plaintiff decided to buy a dining room set, though he complained that the chairs were of light colors and he has very little children. The manager wrote up an invoice which comprised of (1.) 1 Yates Table Top with 20" leaf, (Item No. HOM 5167-96, with unit price of $357.32; (2.) 1 Yates Table Base, (Item No. HOM 5167-96B, with unit price of $212.87 and (3.) 6 Yates Side Chair, (Item No. 5167FS, with unit price of $121.64 each for a total of $729.84. Plaintiff paid with his Chase Bank debit card in the total amount of

$1,484.04. Plaintiff was given a receipt that indicated a delivery date of June 15, 2023 on Invoice NO. 882301680. On the same date, June 11, 2023, Plaintiff having thought it through and decided that the light color chairs could not work for his young family, contacted the manager for refund. The manager sounded welcoming of Plaintiff's decision to seek a refund on the dining room set.

3.    Plaintiff walked back over to the Regency store, but instead of requesting a refund of the Dining Room set, he decided to buy a Livingroom set. The manager was happy that he would end up making a sale anyway. The manager then wrote up the receipt for the Livingroom set. He was supposed to exchange the Dining Room Set with the Livingroom set, and that instead of giving Plaintiff a refund on the Dining Room set, he would simply make him pay the difference in the prices of both items. In preparing the new receipt, however, he wrote (1.) 2 Hallenberg-Fog Armless Chair, (Item No. ASH 4150146), for unit price of $197.83 each for a total of $395.66; (2.) 1 Hallenberg-Fog RAF Sofa w/ Corner Wedge, (Item No. ASH 4150149), for unit price of $505; (3.) 1 Hallenberg- Fog Love Seat, (Item No. ASH 4150155), for unit price of $348.81; (4.) 1 Hallenberg-Fog Oversized Accent Ottoman, (Item No. ASH 4150108), for unit price of $260.31. Then on the same Livingroom set receipt, Plaintiff noticed that the next three items were the same Dining Room Set that Plaintiff came to exchange for the Livingroom set, that has been infused in the entire sale as follows: (5.) 1 Yates Table Top with One 20" Leaf, (Item No. HOM 5167-96), for the unit price of $244.69; (6.) 1 Yates Table Base, (Item No. 5167-96B), for the unit price of $145.77, and (7.) 6 Yates Side Chairs, (Item No. 5167FS), for the unit price of 83.29 each for a total of $499.74. Plaintiff was assessed additional $1,059.94 and told that delivery would be up to 12 weeks. The manager then advised Plaintiff that if any of their delivery crew called to deliver the Dining Room set, to simply refuse delivery. Plaintiff

agreed but did not understand why there could still be any delivery attempt to an exchanged merchandise.

4.     On June 14, 2023, Plaintiff returned to Regency for a bedroom set.  The manager sold him a bedroom set and wrote up the receipt as follows: (1.) 1 Slat Roll King Roll Slats, (Item No. ASH B100-14), for the unit price of $103.63; (2.) 1 Effie-Whitewash King Storage Footboard, (Item No. ASH B255-56S), for the unit price, of $207.27; (3.) 1 Effie-Whitewash King Panel Headboard, (Item No. ASH B255-58), for unit price of $262.55; (4.) 1 Effie-Whitewash Queen/King Platform Rails, (Item No. B255-95), for unit price of $69.09; (5.) 1 Effie-Whitewash Dresser, (Item No. ASH B255-31), for unit price of $414.55; (6.) 1 Effie-Whitewash Bedroom Mirror, (Item No. ASH B255-36), for unit price of $82.90; (7.) 1 Effie-Whitewash Five Drawer Chest, (Item No. ASH B255-46), for unit price of $345.46; and (8) 2 Effie-Whitewash Two Drawer Night Stand, (Item No. ASH B255-92), for unit price of $207.27 for a total of $414.54.  Plaintiff paid a total of $2013.99, and was given a receipt with invoice number 882301701 and promised delivery "up to 2 weeks," written in front of the receipt.

5.     On two occasions, the deliverers of Regency contacted Plaintiff announcing that the Dining Room set had been ready for delivery.  Because the manager advised Plaintiff to refuse delivery, Plaintiff explained to them that Plaintiff had exchanged those items with Livingroom items.  On the third call for the delivery of Dining Room set, the deliverers then explained to Plaintiff that the store record shows that while Plaintiff has refused delivery of the dining room items, he has not been refunded for them.

6. Regency delivered the Living Room items, and then explained that they will charge some fees for Plaintiff's refusing to accept the dining room set. Then the deliverers advised that the bedroom set that was scheduled to be delivered 2 weeks after purchase and payment (for June 28, 2023) could not be delivered until July 14, 2023. Plaintiff expressed his rejection of such new delivery date because it was adding another two weeks and three days to the supposed delivery date. Because Plaintiff did not want to wait that much longer above and beyond what was in his contract for the bedroom furniture, he requested to have his money returned so that he could shop for his bedroom furniture elsewhere.

7. The contract between Regency and Plaintiff stated delivery "up to 2 weeks," and the "Sales Terns and Rules," also stated in paragraph 2(c), that "if Regency fails to deliver the merchandise within two weeks of the Estimated Delivery Date shown on the front of this purchase agreement, you may (1) cancel the contract and receive a full refund or credit equal to your deposit, (2) modify the contract by selecting other merchandise, or (3) negotiate with Regency for another delivery date." Plaintiff opted to *cancel the contract and receive a full refund*. However, when his choice was brought to the attention of the manager, he insisted that he must charge Plaintiff cancellation fee, completely overlooking their own language in the contract. Also, when it was brought to his attention that the dining room set has not been refunded, he started making a phone call to someone whom he was telling to "fix" the receipt to reflect that Plaintiff did not have to receive his refund on that invoice where no delivery was made. The manager repeatedly told Plaintiff that Plaintiff could not understand contract formed "here," and that things are done differently here. He claimed that he had refunded the payment for the bedroom set, less 10%, Plaintiff left Regency store to prepare this complaint.

4

PARTIES

8.      Regency Furniture, Inc. is a Maryland business with a store located at 2201 Cottman Avenue, Philadelphia, PA 19152.  Ifedoo Enigwe is a resident and domicile of Philadelphia, PA.

COURT'S JURISDICTION

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C., Section 1332 (Diversity of Citizenship); 42 U.S.C., Section 1981 (Intentional discrimination); 28 U.S.C., 1367 (Pendent/supplemental Jurisdiction).

VENUE

10.     Eastern District of Pennsylvania is the proper venue because all events leading up to this action took place in Philadelphia and each named party are within this Court's locale.

FIRST CAUSE OF ACTION
(BREACH OF CONTRACT)

11.     Plaintiff repeats herein facts previously alleged in paragraphs 1 to 7, as if individually alleged in this cause of action and states as follows:

12.     Regency Furniture breached[1] the contract it entered into with Plaintiff.

13.     On June 14, 2023 Plaintiff purchased a bedroom set, and in the front page of the receipt issued by Regency Furniture, written and acknowledged by the manager, it allowed "up to 2 weeks" for delivery.  On June 30, Plaintiff received a phone call from the deliverers at Regency advising that delivery has been pushed back to July 14, 2023.  This is 16 days past the in-contract delivery date.

---

1. In Pennsylvania, three elements are necessary to properly plead a cause of action for breach of contract: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *CoreStates Bank, Nat'l Assn. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super.1999)

5

14. The contract, on the reverse side, paragraph 2(c), states that "if Regency fails to deliver the merchandise within two weeks of the Estimated Delivery Date shown on the front of this purchase agreement, you may (1) cancel the contract and receive a full refund or credit equal to your deposit, (2) modify the contract by selecting other merchandise, or (3) negotiate with Regency for another delivery date." Plaintiff opted to *cancel the contract and receive a full refund*.

15. The manager refused to follow the simple language of their own drafted contract. Therefore, a breach of contract has occurred and Regency Furniture and the manager are liable to Plaintiff because Plaintiff has suffered damages from the failure to deliver his bedroom set as agreed-upon.

SECOND CAUSE OF ACTION
(FRAUDULENT MISREPRESENTATION)

16. Plaintiff repeats herein facts previously alleged in paragraphs 1 to 7, as if individually alleged in this cause of action and states as follows:

17. When the manager infused into the dining room set receipt which Plaintiff clearly told him he did not wish to buy but wished to exchange for a Livingroom set, he did it to underhandedly sell the dining room set anyway.

18. The manager knew he was committing fraud at that time, and he did it with the intention that Plaintiff will not find out and rely on his invoice and information to be sucked into paying for the dining room set.

19. When The manager fraudulently got Plaintiff to pay for the dining room set, he already said he did not want, and then advised Plaintiff to refuse to take delivery of the set, he knew he was committing fraud which Plaintiff relied on to act.

20. Plaintiff lost money due to the manager's fraudulent misrepresentation.

## THIRD CAUSE OF ACTION
### (DISCRIMINATION IN CONTRAVENTION OF TITLE 42 U.S.C., SECTION 1981)

21.  Plaintiff repeats herein facts previously alleged in paragraphs 1 to 7, as if individually alleged in this cause of action and states as follows:

22.  The manager treated Plaintiff disparately because Plaintiff has a different national origin than the manager

23.  The manager repeatedly told Plaintiff that he would not understand the language of the Regency terms and rules because things are done differently here (meaning United States as compared with Plaintiff's place of national origin.)

24.  When Plaintiff asked the manager where he was born, he proudly, in a matter-of-fact manner, said, "here."

25.  When Plaintiff was denied refund which was clearly provided for in the Regency Furniture terms and rules, everyone in the "front desk" busted out laughing at the "foreigner" who could not understand the readings of Regency Furniture terms and rules.

26.  But for Plaintiff's place of national origin being different from that of the manager and the other employees of Regency Furniture, Plaintiff would not have been treated disparately as he had been.

27.  Because of the disparate treatment Plaintiff suffered in the hands of the manager and the other employees of Regency Furniture, Plaintiff was unable to enjoy the contract he entered with Regency Furniture, instead he suffered loss of money, loss of services which he came for in the first place, embarrassment from the disparate treatment, .and physical pain from the emotional distress he suffered.

## FOURTH CAUSE OF ACTION
## (THEFT)

28. Plaintiff repeats herein facts previously alleged in paragraphs 1 to 7, as if individually alleged in this cause of action and states as follows:

29. The manager committed theft twice when he charged Plaintiff for dining set that Plaintiff did not want, which the manager knew Plaintiff did not want, and when Plaintiff requested the refund of the money, the manager refused to give it, instead started making a call to someone and telling them to "fix" the papers on the money.

30. The second act of theft committed by the manager was when he instructed one of his secretaries to take 10% of Plaintiff's money in the bedroom set that was never delivered within the contractual time period. Moreover, the manager and Regency Furniture never did return the money they purported to be refunding.

31. The manager took these monies knowing they belong to Plaintiff, and without the consent or authorization of Plaintiff, and with intent to deprive Plaintiff of the monies.

## REQUEST FOR RELIEF

32. Plaintiff requests this Court enter an order compelling the defendants to pay Plaintiff in excess of $3,000 for the actual loss suffered by Plaintiff.

33. Plaintiff further requests this Court to enter an order compelling the defendants to pay compensatory damages of One hundred Thousand dollars, for each of the four counts of this complaint.

34. Plaintiff further requests this Court to enter order imposing punitive damages for the egregious acts of defendants in the amount of Three hundred Thousand dollars.

Respectfully Submitted:

_____
Ifedoo Enigwe, Pro Se
Plaintiff

Dated: July 10, 2023.